UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


NATHANIEL PORTER,

        Plaintiff,                              Hon. Richard Alan Enslen

v.                                             Case No. 1:05 CV 562

PATRICIA CARUSO, et al.,

        Defendants.
_____/


## REPORT AND RECOMMENDATION

        This matter is before the Court on <u>MDOC Defendants' Motion for Summary Judgment</u>, (dkt. #91), and <u>Plaintiff's Motion to Deny Defendant's Motion for Summary Judgment</u>, (dkt. #95). Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned recommends that Defendants' motion be **granted in part and denied in part** and, furthermore, recommends that Plaintiff's motion be **granted in part and denied in part**.


## BACKGROUND

        Plaintiff asserts that he is an adherent of an ancient Egyptian religion known as Kemetic Spiritual Science. Plaintiff alleges that as part of his religious faith he legally changed his name to N. Kalonji Owusu I. Michigan Department of Corrections policy recognizes that prisoners may legally change their names. Specifically, MDOC policy provides that

> The commitment name shall be used on all official Department documents throughout the prisoner's incarceration and parole. A new legal name may be used in correspondence to a prisoner and other

>communications such as grievance responses. However, the commitment name must be used on all documents which affect the prisoner's sentence, such as a forfeiture or restoration of time, a parole order, and a sentence discharge or termination. Commitment names and legal names shall be cross referenced at the information desk and mail room. All computerized records shall be cross referenced to the extent possible.

Mich. Dep't of Corr. Policy Directive 03.01.110 ¶ D.

Prisoners are entitled to receive - at their own expense - a new prisoner identification card "indicating both the commitment name and the new legal name." *Id.* at ¶ E. The Policy Directive further provides that MDOC employees having contact with the prisoner "should refer to the prisoner or parolee by the new legal name" and "prisoners and parolees shall not be forced to refer to themselves by their commitment name if they have a validly adopted new legal name." *Id.* at ¶ F.

In his amended complaint, Plaintiff asserts several claims against Defendants Caruso, Burnett, Morris, Bozung, and Parsons. (Dkt. #79). He asserts that prison officials refused to recognize his new legal name and instead forced him to refer to himself by his former name in violation of his First Amendment right to freely practice his religion. Plaintiff asserts that Defendant Bozung unlawfully retaliated against him, and Defendant Parsons denied him store privileges, for insisting on using (and being identified by) his legal name. Plaintiff alleges that Defendant Burnett unlawfully denied his requests to possess an ankh cross and participate in the Kosher meal plan. Finally, Plaintiff challenges the constitutionality of several Michigan Department of Corrections policies pursuant to which Defendants allegedly acted. Defendants Morris, Parons, Bozung, and Burnett now move for summary judgment.

**SUMMARY JUDGMENT STANDARD**

In reviewing a motion for summary judgment, the Court must confine itself to the narrow questions of whether there exist "no genuine issue[s] as to any material fact and [whether] the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). On a Rule 56 motion, the Court cannot try issues of fact, but is empowered to determine only whether there exist issues in dispute to be decided in a trial on the merits. *See Perez v. Aetna Insurance Co.*, 96 F.3d 813, 819 (6th Cir. 1996). The crux of the motion is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

A motion for summary judgment requires the Court to view "inferences to be drawn from the underlying facts...in the light most favorable to the party opposing the motion." *Matsushita Electric Ind. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The opponent, however, has the burden to show that a "rational trier of fact [could] find for the non-moving party [or] that there is a 'genuine issue for trial.'" *Historic Preservation Guild of Bay View v. Burnley*, 896 F.2d 985, 993 (6th Cir. 1989).

As the Sixth Circuit has recognized, the Supreme Court has encouraged the granting of summary judgments, as such may be "an appropriate avenue for the 'just, speedy and inexpensive determination' of a matter." *Kutrom v. City of Center Line*, 979 F.2d 1171, 1173 (6th Cir. 1992). Consistent with this concern for judicial economy, "the mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient." *Anderson*, 477 U.S. at 252. Furthermore, mere allegations do not suffice. *See Cloverdale Equip. Co. v. Simon Aerials, Inc.*, 869 F.2d 934, 937 (6th Cir. 1989) ("the party with the burden of proof at trial is obligated to provide concrete evidence supporting its claims and establishing the existence of a genuine issue of fact").

## ANALYSIS

**I.        Count I**

In Count I of his amended complaint, Plaintiff alleges that prison officials working at the information desk failed to cross-reference Plaintiff's commitment name with his new legal name, thus "forcing Plaintiff to waive his religious name in order to receive visits." (Dkt. #79 at ¶¶ 18-56). Plaintiff asserts that prison officials would not permit him to receive visitors if he identified himself by his legal name rather than his commitment name. *Id.* According to Plaintiff, prison officials have improperly failed to "establish a formal procedure, per policy, cross-referencing committed/religious names."

While Plaintiff has described these alleged wrongs at length he has failed to allege that such wrongs were committed by any of the Defendants in this case. The only allegation in Count I of Plaintiff's amended complaint which is asserted against a Defendant in this case is Plaintiff's assertion that Defendant Morris acted improperly toward one of Plaintiff's visitors. *Id.* at ¶ 52. Plaintiff asserts that Wardene Anderson visited him in early August 2003. Following Ms. Anderson's visit with Plaintiff, Defendant Morris allegedly "demanded that she give (i.e., verbally say) Plaintiff's commitment name and refused to allow her to leave until she relented. . .in effect, plac[ing] [Ms. Anderson] under arrest until she gave the officer Plaintiff's committed name." *Id.*

While this allegation is troubling if true, Plaintiff lacks standing to assert this particular claim. Plaintiff does not allege that Defendant Morris' actions prevented him from visiting with Ms. Anderson or otherwise violated *his* rights. Rather, Plaintiff asserts that Defendant Morris' actions against Ms. Anderson, taken *after* she completed her visit with Plaintiff, violated Ms. Anderson's right to be free from improper seizure or arrest. While Ms. Anderson may be able to assert a legal claim based

on this encounter, Plaintiff lacks standing to assert such a claim on her behalf. *See American Canoe Ass'n Inc. v. City of Louisa Water & Sewer Comm'n*, 389 F.3d 536, 544-45 (6th Cir. 2004).

Moreover, even if Plaintiff did has standing to assert this claim it must nonetheless be dismissed for failure to exhaust administrative remedies as Defendant Morris asserts. Pursuant to 42 U.S.C. § 1997e(a), a prisoner asserting an action with respect to prison conditions under 42 U.S.C. § 1983 must first exhaust all available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516, 524 (2002). Plaintiff submitted a Step I grievance regarding this particular incident. (Dkt. #1, Exhibit H). However, by his own admission Plaintiff failed to pursue the matter beyond Step I of the grievance process. (Dkt. #79 at ¶ 54).

Accordingly, for the reasons articulated herein, the Court recommends that Plaintiff's claim against Defendant Morris be dismissed on the ground that Plaintiff lacks standing to assert such claim. In the alternative, the Court recommends that this claim be dismissed without prejudice for failure to exhaust administrative remedies.

**II.        Count II**

The second count of Plaintiff's amended complaint actually contains two separate claims. First, Plaintiff asserts that Defendant Bozung improperly retaliated against him for his insistence on using (and being identified by) his legal name rather than his commitment name. (Dkt. #79 at ¶¶ 65-73). Plaintiff also asserts that Defendant Parsons denied his request to purchase items from the prison store because he insisted on using (and being identified by) his legal name. *Id.* at ¶¶ 74-78. Defendant Bozung asserts that she is entitled to summary judgment as her alleged actions do not constitute a

violation of Plaintiff's rights. Defendant Parsons asserts that Plaintiff has failed to properly exhaust his administrative remedies with respect to the claims against him.

        A.      Defendant Parsons

Plaintiff asserts that on January 24, 2003, and February 3, 2003, he submitted requests - using his legal name - to purchase items from the prison store. (Dkt. #79 at ¶¶74, 78). According to Plaintiff, Defendant Parsons rejected both requests because Plaintiff identified himself by the "wrong name" in his requests. *Id.* Plaintiff asserts that he submitted Step I grievances regarding these alleged incidents. (Dkt. #1, Exhibits Q-R; Dkt. #79 at ¶ 79). Plaintiff asserts that these grievances were rejected, but rather than pursuing these matters through Step III of the grievance process, Plaintiff asserts that these particular grievances were "fully exhausted at Step I." (Dkt. #79 at ¶ 85). The Court disagrees that these grievances were "fully exhausted" at Step I and, therefore, recommends that Plaintiff's claims against Defendant Parsons be dismissed without prejudice for failure to exhaust administrative remedies.

        B.      Defendant Bozung

According to Plaintiff, Defendant Bozung "repeatedly" told him that "the only name she would recognize and address Plaintiff by was the name that appeared on the unit locator/countboard, i.e., Plaintiff's religiously offensive committed name." *Id.* at ¶ 67. As a result of Plaintiff's insistence that "his religious name be acknowledged and recognized," Defendant Bozung allegedly retaliated against Plaintiff by moving him to a different cell "close to the officers' desk, where she could 'watch' him." *Id.* at ¶¶ 68-71.

To prevail on his retaliation claim, Plaintiff must satisfy the following elements: (1) he was engaged in constitutionally protected conduct, (2) he suffered adverse action which would deter a person of "ordinary firmness" from continuing to engage in such protected conduct, and (3) there exists a causal connection between the protected conduct and the adverse action - in other words, the adverse action was motivated at least in part by Plaintiff's protected conduct. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999).

Even assuming that Plaintiff can satisfy the first and third elements of the analysis, he cannot establish that he suffered an adverse action sufficient to deter a person of ordinary firmness from continuing to engage in protected conduct. As is well recognized, "a prisoner is expected to endure more than the average citizen and enjoys no protected right to remain incarcerated in a given correctional facility." *Hix v. Tennessee Department of Corrections*, 196 Fed. Appx. 350, 358 (6th Cir., Aug. 22, 2006) (citations omitted).

Logic dictates that if prisoners enjoy no right to be housed in any particular facility, they likewise enjoy no right to reside in any particular cell within a correctional facility. Thus, unless there are "foreseeable consequences" to a transfer that would inhibit the prisoner's ability to engage in protected conduct, such transfer does not constitute an "adverse action" for purposes of the retaliation analysis. *Hix*, 196 Fed. Appx. at 358 (citing *Siggers-El v. Barlow*, 412 F.3d 693, 701-04 (6th Cir. 2005)). Plaintiff has submitted no evidence that simply being transferred from one cell to another cell inhibited his ability to freely practice his religion. Accordingly, the Court recommends that Defendant Bozung be granted summary judgment as to this particular claim.

**III.        Count III**

According to Plaintiff, the ankh cross is "the primary symbol of [his] ancient Egyptian religious beliefs and practices." (Dkt. #79 at ¶ 95). On or about January 20, 2003, he lost his ankh cross. *Id.* at ¶ 101. Because his religious beliefs are "non-traditional," Plaintiff asserts that he was required to receive permission to possess and wear an ankh cross. *Id.* at ¶¶ 92-99. Plaintiff asserts that his request to purchase and wear a replacement ankh cross was denied by Defendant Burnett. *Id.* at ¶¶ 101-08. Plaintiff also asserts that his religious beliefs compel him to adhere to certain dietary practices. *Id.* at ¶¶ 120-33. In this respect, Plaintiff asserts that "the dietary laws to which [he] subscribes are substantially and actually the same as those commanded to Moses at Sinai, which have evolved into what is known in Judaism as kosher." *Id.* at ¶ 133. Accordingly, on September 20, 2004, Plaintiff requested to participate in the kosher meal plan. *Id.* at ¶ 136. Plaintiff's request was denied by Defendant Burnett. *Id.* at ¶¶ 137-39. Plaintiff asserts that Defendant Burnett's actions violate his First Amendment right to freely practice his religion, as well as his rights under the Religious Land Use and Institutionalized Persons Act (RLUIPA). Defendant Burnett has moved for summary judgment as to these claims.

While "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights," inmates clearly retain the First Amendment protection to freely exercise their religion. *See O'Lone v. Shabazz*, 482 U.S. 342, 348 (1987) (citations omitted). To establish that this right has been violated, Plaintiff must establish that: (1) the belief or practice he seeks to protect is religious within his own "scheme of things," (2) that his belief is sincerely held, and (3) the Defendant's behavior infringes upon this practice or belief. *Kent v. Johnson*, 821 F.2d 1220, 1224-25 (6th Cir. 1987);

*see also*, *Bakr v. Johnson*, 1997 WL 428903 at *2 (6th Cir., July 30, 1997) ("sincerely held religious beliefs require accommodation by prison officials").

In relevant part, RLUIPA prohibits any government from imposing a "substantial burden on the religious exercise" of a prisoner, unless such burden constitutes the least restrictive means of furthering a compelling governmental interest. 42 U.S.C. § 2000cc-1(a). The term religious exercise "includes any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc-5(7). While this definition of religious exercise is broad, it does require that Plaintiff's religious beliefs be "sincerely held." *See, e.g., Episcopal Student Foundation v. City of Ann Arbor*, 341 F.Supp.2d 691, 700 (E.D. Mich. 2004) (citation omitted); *Lovelace v. Lee*, - - - F.3d - - -, 2006 WL 3823127 at *38 n.2 (4th Cir., Dec. 29, 2006) (citations omitted).

Even if Defendant Burnett's actions are found to violate Plaintiff's First Amendment right to freely practice his religion or his right under RLUIPA to not have his religious practices substantially burdened, Defendant Burnett is nonetheless entitled to summary judgment if he establishes that his actions were reasonably related to legitimate penological interests (in the context of Plaintiff's First Amendment claims) or constitute the least restrictive means of furthering a compelling governmental interest (with respect to Plaintiff's RLUIPA claims). *See Turner v. Safley*, 482 U.S. 78, 84-91 (1987); 42 U.S.C. § 2000cc-1(a).

Defendant Burnett does not assert that his actions were reasonably related to legitimate penological interests or constituted the least restrictive means of furthering a compelling governmental interest. Instead, Defendant Burnett simply asserts that Plaintiff's religious beliefs are not sincerely held. While a reasonable juror might perhaps conclude that such is the case, the evidence of record more than supports the conclusion that Plaintiff's religious beliefs are sincerely (and intensely) held. Resolution

of this particular question constitutes, therefore, a genuine factual dispute which must be resolved at trial. *See Bakr*, 1997 WL 428903 at *2 ("a decision on whether a particular religious belief is sincerely held cannot generally be made in advance of a hearing allowing for the presentation of testimony"); *Hernandez v. Commissioner of Internal Revenue*, 490 U.S. 680, 699 (1989) ("[i]t is not within the judicial ken to question the centrality of particular beliefs or practices to a faith, or the validity of particular litigants' interpretations of those creeds").

Defendant Burnett also claims that he is entitled to qualified immunity as to Plaintiff's RLUIPA claims. Generally, when government officials perform discretionary functions, they are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). In determining whether an official is entitled to qualified immunity, the focus is on the objective legal reasonableness of the official's actions in light of clearly established law. *See Harlow*, 457 U.S. at 818. A defendant is entitled to qualified immunity unless the contours of the right are "sufficiently clear that a reasonable official would understand that what he is doing violates that right." *McBride v. Village of Michiana*, 100 F.3d 457, 460 (6th Cir. 1996) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). The unlawfulness of the conduct at issue must be apparent in light of pre-existing law. *See Anderson*, 483 U.S. at 640.

On November 7, 2003, the Sixth Circuit Court of Appeals held that "the portion of RLUIPA that applies to institutionalized persons. . .violates the Establishment Clause" and was, therefore, unconstitutional. *Cutter v. Wilkinson*, 349 F.3d 257 (6th Cir. 2003). On May 31, 2005, the United States Supreme Court reversed the Sixth Circuit's decision, finding that RLUIPA did not violate the Establishment Clause. *Cutter v. Wilkinson*, 544 U.S. 709 (2005). Defendant Burnett asserts,

therefore, that "the law was not 'clearly established' with respect to claims advanced under the RLUIPA prior to" the Supreme Court's decision in *Cutter*. Accordingly, Defendant Burnett asserts that he is entitled to qualified immunity as to Plaintiff's RLUIPA claims because the alleged actions giving rise to such claims predated the Supreme Court's decision in *Cutter*. The Court only partly agrees.

The actions giving rise to Plaintiff's claim that Defendant Burnett unlawfully denied his request to participate in the kosher meal program occurred between the dates of September 20, 2004, and March 23, 2005. (Dkt. #79 at ¶¶ 136-46). This was during the time period following the Sixth Circuit's *Cutter* decision, but before the Supreme Court's subsequent reversal thereof. During this period of time, therefore, clearly established law as articulated by the Sixth Circuit provided that the portion of RLUIPA on which Plaintiff relies was unconstitutional. Accordingly, the Court recommends that Defendant Burnett is entitled to qualified immunity as to Plaintiff's RLUIPA claim regarding Burnett's denial of his request to participate in the kosher meal program.

However, the events giving rise to Plaintiff's claim that Defendant Burnett unlawfully denied his request to purchase an ankh cross *predate* the Sixth Circuit's *Cutter* decision. When evaluating a claim of qualified immunity the Court must assess whether it was clearly established - *as of the date the defendant acted* - that the alleged actions violated federal law. When Defendant Burnett allegedly denied Plaintiff's request to purchase an ankh cross, the Sixth Circuit had not yet concluded that the relevant portions of RLUIPA were unconstitutional. As has been recognized, "as soon as the RLUIPA was signed into law, it became clearly established law in this country." *Figel v. Overton*, 2006 WL 2521600 at *2 (W.D. Mich., Aug. 30, 2006). The subsequent *Cutter* decisions by the Sixth Circuit and the Supreme Court do not alter the ultimate validity of RLUIPA or the fact that when Defendant Burnett acted, RLUIPA was clearly established law. To conclude otherwise, "the court would have to

make a rule that whenever a law is enacted in this country, it is not clearly established law until a court first rules on its constitutionality." *Figel*, 2006 WL 2521600 at *2. Defendant Burnett has identified no authority supporting such a proposition.

Accordingly, the Court recommends that Plaintiff's First Amendment claims against Defendant Burnett be permitted to go forward. The Court further recommends that Plaintiff's claim that Defendant Burnett violated his rights under RLUIPA by denying his request to purchase an ankh cross be permitted to go forward. With respect to Plaintiff's claim that Defendant Burnett violated his rights under RLUIPA by denying his request to participate in the kosher meal program, the Court recommends that Defendant Burnett is entitled to qualified immunity.

**IV.      Count IV**

In count IV of his amended complaint, Plaintiff challenges the constitutionality of several policies enacted by the Michigan Department of Corrections. (Dkt. #79 at ¶¶ 148-66). Specifically, Plaintiff asserts that the following policies are unconstitutional on their face: (1) Policy Directive 03.01.110 (Prisoner/Parolee Name Changes); (2) Policy Directive 04.02.130 (Prisoner Store); (3) the MDOC's Visitor Tracking System; and (4) Policy Directive 05.03.150 (Religious Beliefs and Practices of Prisoners). *Id.* at ¶¶ 148-65. Plaintiff asserts that these policies are - on their face - unconstitutional. To prevail on these claims, Plaintiff "must establish that no set of circumstances exists under which the [challenged policies] would be valid." *United States v. Salerno*, 481 U.S. 739, 745 (1987); *see also, Cincinnati Women's Services, Inc. v. Taft*, 468 F.3d 361, 368 (6th Cir. 2006).

Policy Directive 03.01.110 acknowledges that a prisoner may legally change his name. The policy instructs prison staff to "refer to the prisoner or parolee by the new legal name" and,

furthermore, provides that "prisoners and parolees shall not be forced to refer to themselves by their commitment name if they have validly adopted [a] new legal name." The policy also provides that the MDOC's "computerized records shall be cross-referenced to the extent possible." Plaintiff has failed to establish that there exists no circumstance under which this policy would be constitutional. The Court finds that this policy is not unconstitutional on its face.

Policy Directive 04.02.130 provides that inmates may "purchase approved items for their personal use" from the prison store. The policy identifies more than 200 "approved" items which prisoners may purchase and also provides for the creation of a "prisoner store committee" which may make recommendations regarding the items which the prison store offers for sale. The policy provides that the retail prices of the items in the prison store "shall be adjusted to ensure store net profits do not exceed twelve percent yearly." Plaintiff has not demonstrated that there exists no circumstance under which this policy would be constitutional. The Court concludes that this policy is not unconstitutional on its face.

Plaintiff also challenges the MDOC's "Visitor Tracking System." Plaintiff does not indicate whether this alleged "system" is articulated in an MDOC policy directive (or exists in another written form) or whether it is instead an informal (i.e., unwritten) "policy" carried out by certain prison officials. Nonetheless, it appears that Plaintiff's challenge to the "Visitor Tracking System" mirrors the allegations asserted in Count I of Plaintiff's amended complaint. As noted above, in Count I of his amended complaint, Plaintiff asserts that by failing to "establish a formal procedure, per policy, cross-referencing committed/religious names," prison officials have forced Plaintiff to identify himself by his commitment name when receiving visitors.

To the extent that the "Visitor Tracking System" is an unwritten "policy" carried out by certain prison officials, Plaintiff's claim should not be characterized as a facial challenge to an official enactment. Instead, such is properly characterized as a claim that the Constitution guarantees to Plaintiff that prison officials will refer to him only by his chosen appellation. The Constitution guarantees no such right. *See Spies v. Voinovich*, 173 F.3d 398, 406 (6th Cir. 1999) (recognizing that the issue of prisoner "name change usage relates to prison administration," a matter in which the courts must defer to prison administrators, and, furthermore, that a prisoner "has no constitutional right to dictate how prison officials keep their prison records"); *Rahman v. Stephenson*, 626 F.Supp. 886, 887 (W.D. Tenn. 1986) ("a prisoner's constitutional right to religious freedom can properly be limited by the legitimate need of prison administrators to be able to keep track of their inmate population").

In the event, however, that the "Visitor Tracking System" is an official MDOC policy or enactment, the result is the same. Requiring prisoners to identify themselves by their commitment name when receiving visitors is a legitimate requirement which enables prison officials to keep track of the visitors which each inmate receives. Plaintiff has failed to establish that there exists no circumstance under which this policy would be constitutional. The Court finds that this policy is not unconstitutional on its face.

Finally, Plaintiff challenges the constitutionality of Policy Directive 05.03.150. This policy recognizes that prisoners must be "permitted to exercise their religious beliefs within the constraints necessary for the order and security of the facility." This policy provides that prisoners may attend religious services and activities, possess religious materials, participate in religious menus/meals, and visit with clergy and religious volunteers. Plaintiff has failed to establish that there exists no

circumstance under which this policy would be constitutional. The Court finds that this policy is not unconstitutional on its face.

### V.       Plaintiff's Claims Against Defendant Caruso

At the very outset of his amended complaint, Plaintiff asserts that Defendant Caruso is a Defendant in this matter. (Dkt. #79 at ¶ 2). However, aside from alleging that Defendant Caruso denied his Step III grievance relating to his request to participate in the kosher meal plan, Plaintiff has not identified any allegedly unlawful *action* on Defendant Caruso's part.

Liability in a § 1983 action cannot be premised upon passive behavior or an alleged failure to act, rather liability must be based upon active unconstitutional behavior. *See Salehpour v. University of Tennessee*, 159 F.3d 199, 206-07 (6th Cir. 1998), *cert. denied*, 526 U.S. 1115 (1999). Accordingly, liability in a § 1983 action does not attach based upon allegations that a defendant simply denied a prisoner's grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999); *Lee v. Michigan Parole Board*, 2004 WL 1532563 at *2 (6th Cir., June 23, 2004) ("[s]ection 1983 liability may not be imposed simply because a defendant denied an administrative grievance or failed to act upon information contained in a grievance"); *Alder v. Correctional Medical Services*, 2003 WL 22025373 at *2 (6th Cir., Aug. 27, 2003) ("[t]he mere denial of a prisoner's grievance states no claim of constitutional dimension").

The Court further observes that Plaintiff has failed to properly serve Defendant Caruso. Plaintiff's amended complaint was accepted for filing on August 8, 2006. (Dkt. #78). However, Plaintiff has yet to serve this action on Defendant Caruso. Moreover, Plaintiff has not requested the Court's assistance in effecting service on Defendant Caruso.

Federal Rule of Civil Procedure 4(c) indicates that "[a] summons must be served together with a copy of the complaint." The time frame within which service must be effected is articulated in Rule 4(m), which provides that if service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint, "the court, upon motion or on its own initiative after notice to the plaintiff, shall dismiss the action without prejudice as to that defendant." If the plaintiff demonstrates good cause for such failure, however, "the court shall extend the time for service for an appropriate period." Fed. R. Civ. P. 4(m); *see also*, *Bush v. City of Zeeland*, 2003 WL 22097837 at *2 (6th Cir., Sep. 5, 2003) (citation omitted).

Accordingly, the Court recommends that Plaintiff's claims against Defendant Caruso be dismissed for failure to state a claim upon which relief may be granted. In the alternative, the Court recommends that such claims be dismissed without prejudice for failure to timely effect service.

### VI.     Plaintiff's Motion to Deny Defendants' Motion for Summary Judgment

Plaintiff asserts that Defendants' motion for summary judgment should be denied so that he can complete the discovery process. The various deficiencies in Plaintiff's amended complaint, as detailed above, are not amenable to "correction" through the discovery process. In other words, no amount of discovery can alter the Court's recommendations as to such claims. As to the claims in count III of Plaintiff's amended complaint (save Plaintiff's claim that Defendant Burnett violated his rights under RLUIPA by denying his request to participate in the kosher meal program), Plaintiff may pursue discovery to the extent that such attempts are consistent with applicable law, including but not limited to the Federal Rules of Civil Procedure. Accordingly, the Court recommends that Plaintiff's motion to deny Defendants' motion for summary judgment be **denied in part and granted in part**.

## CONCLUSION

As discussed herein, the Court recommends that <u>MDOC Defendants' Motion for Summary Judgment</u>, (dkt. #91), be **granted in part and denied in part**. The undersigned also recommends that <u>Plaintiff's Motion to Deny Defendant's Motion for Summary Judgment</u>, (dkt. #95), be **granted in part and denied in part**. Specifically, the Court recommends that the claims in Plaintiff's amended complaint be dismissed, except for Plaintiff's First Amendment claims against Defendant Burnett and Plaintiff's claim that Defendant Burnett violated his rights under RLUIPA by denying his request to purchase an ankh cross.

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within ten (10) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

Respectfully submitted,

Date: February 21, 2007                                   /s/ Ellen S. Carmody
                                                                           ELLEN S. CARMODY
                                                                           United States Magistrate Judge