UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NATHANIEL PORTER,

               Plaintiff,                                    Hon. Janet T. Neff

v.                                                Case No. 1:05 CV 562

PATRICIA CARUSO, et al.,

               Defendants.

_____/

**REPORT AND RECOMMENDATION**

       This matter is before the Court on Defendant's Motion Regarding Availability of Monetary Damages and Qualified Immunity. (Dkt. #157).[1] Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned recommends that Defendant's motion be **granted in part and denied in part**.

**BACKGROUND**

       Plaintiff asserts that he is an adherent of an ancient Egyptian religion known as Kemetic Spiritual Science. Plaintiff alleges that as part of his religious faith he legally changed his name to N. Kalonji Owusu I, a practice permitted by Michigan Department of Corrections (MDOC) policy. In his amended complaint, Plaintiff asserted several claims against Defendants Caruso, Burnett, Morris, Bozung, and Parsons. (Dkt. #79). Specifically, Plaintiff asserted that prison officials refused to

---

[1] As the Court previously communicated to the parties privately, Defendant's pleading (filed on September 26, 2007) was not docketed as a motion. Thus, the Court was unaware that this matter required its attention. The circumstance was brought to the Court's attention during a July 29, 2008 settlement conference. The Court has since communicated with the Clerk's Office to ensure that this circumstance does not reoccur. The Court apologizes for the delay in resolving that matter.

recognize his new legal name and instead forced him to refer to himself by his former name in violation of his First Amendment right to freely practice his religion.  Plaintiff asserted that he was retaliated against and denied store privileges for insisting on using (and being identified by) his new legal name. Plaintiff alleged that his requests to possess an ankh cross and participate in the Kosher meal plan were improperly denied.  Plaintiff also challenged the constitutionality of several Michigan Department of Corrections policies pursuant to which Defendants allegedly acted.

Most of Plaintiff's claims were subsequently dismissed for failure to exhaust administrative remedies or on summary judgment grounds.  The only claims remaining in this matter are Plaintiff's claims under the First Amendment and the Religious Land Use and Institutionalized Persons Act (RLUIPA) that Defendant Burnett unlawfully denied his request to purchase an ankh cross. Defendant Burnett now asserts that he is entitled to qualified immunity and sovereign immunity. Defendant further asserts that Plaintiff's ability to recover monetary damages in this matter is significantly limited.  For the reasons discussed herein, the Court recommends that Defendant's motion be granted in part and denied in part.

I.        **Defendant Burnett Enjoys Immunity as to Plaintiff's RLUIPA Claim for Monetary Damages Asserted Against him in his Official Capacity**[2]

The Eleventh Amendment to the United States Constitution provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or

---

[2] Plaintiff has sued Defendant Burnett in both his official and individual capacity.  Defendant asserts that Plaintiff is not entitled to recover monetary damages on either his official capacity or individual capacity RLUIPA claims.  The Court notes that Plaintiff has not expressly requested monetary damages for Defendant's alleged violation of RLUIPA, but instead appears to seek only injunctive and declaratory relief.  While Plaintiff does not appear to have expressly requested monetary damages for his RLUIPA claims, the Court will nonetheless address the merits of Defendant's motion in this regard (in Sections I and II herein) in the event that Plaintiff again amends his complaint or his amended complaint is interpreted as requesting such damages.

prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend XI. This provision has long been interpreted as precluding "federal jurisdiction over suits against nonconsenting States." *Kimel v. Florida Board of Regents*, 528 U.S. 62, 72-73 (2000). Accordingly, the Eleventh Amendment generally precludes federal court actions against a State unless that state has waived its sovereign immunity or consented to suit in federal court.[3] *See Grinter v. Knight*, - - - F.3d - - -, 2008 WL 2444809 at *3 (6th Cir., June 19, 2008) (citing *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 66 (1989)). The Court notes that the State of Michigan "has not consented to being sued in civil rights actions in the federal courts." *Johnson v. Unknown Dellatifia*, 357 F.3d 539, 545 (6th Cir. 2004).

An action asserted against a State official in his official capacity is considered an action against the State. *See Hafer v. Melo*, 502 U.S. 21, 25 (1991). As such, "the only immunities available to the defendant in an official-capacity action are those that the governmental entity possesses." *Id.* Defendant Burnett asserts that Plaintiff's official capacity RLUIPA claims for monetary damages must be dismissed because the State of Michigan has not waived its sovereign immunity as to claims for monetary damages under RLUIPA.

Article I of the United States Constitution contains the Spending Clause, pursuant to which Congress possesses the "Power to lay and collect Taxes, Duties, Imposts and Excises, to pay the Debts and provide for the common Defence and general Welfare of the United States." U.S. Const. Art. I, § 8, cl. 1. The authority conferred upon Congress by the Spending Clause includes "the power to require states to comply with federal directives as a condition of receiving federal funds." *Cutter v.*

---

[3] The exception to this general rule concerns actions for prospective injunctive or declaratory (non-monetary) relief compelling a state official (in his official capacity) to comply with federal law. *See Ex Parte Young*, 209 U.S. 123 (1908); *S & M Brands, Inc. v. Cooper*, 527 F.3d 500, 507-08 (6th Cir. 2008) (citing *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989)).

*Wilkinson*, 423 F.3d 579, 584-85 (6th Cir. 2005) (citing *South Dakota v. Dole*, 483 U.S. 203, 206 (1987)).  Enactment of RLUIPA constitutes "a permissible exercise of Congress's Spending Clause powers."  *Cutter*, 423 F.3d at 584-90.  Defendant concedes that Michigan accepts federal prison funding.  The question, therefore, becomes whether the State of Michigan, by accepting federal funds, has agreed to waive its sovereign immunity and subject itself to suits for money damages in federal court.

As the Supreme Court recognizes, Congress enjoys "broad power to set the terms on which it disburses federal money to the States."  *Arlington Central School District Board of Education v. Murphy*, 548 U.S. 291, 296 (2006) (citation omitted).  However, when Congress "attaches conditions" to a State's acceptance of federal funds, any such conditions "must be set out 'unambiguously.'"  This requirement is premised on the notion that because "legislation enacted pursuant to the spending power is much in the nature of a contract. . .to be bound by federally imposed conditions, recipients of federal funds must accept [such conditions] voluntarily and knowingly."  Accordingly, states cannot be held to have accepted conditions of which they are "unaware" or "unable to ascertain."  *Id.*

There is presently no consensus among the Circuit Courts of Appeal regarding whether acceptance by a State of federal prison funds constitutes a waiver of sovereign immunity as to RLUIPA claims for monetary damages asserted against a State (or State official in his official capacity).  Neither the United States Supreme Court nor the Sixth Circuit Court of Appeals has addressed this issue.  The Fourth Circuit Court of Appeals has concluded that the States enjoy sovereign immunity as to such claims.  *See Madison v. Virginia*, 474 F.3d 118 (4th Cir. 2006).  The Third Circuit Court of Appeals, in a brief unpublished decision, has reached the same conclusion.  *Scott v. Beard*, 252 Fed. Appx. 491 (3rd Cir., Oct. 30, 2007).  The Circuit Court for the District of Columbia has concluded that the States enjoy sovereign immunity from claims for money damages under the analogous Religious Freedom

Restoration Act. *Webman v. Federal Bureau of Prisons*, 441 F.3d 1022 (D.C. Cir. 2006). It appears that the Eleventh Circuit Court of Appeals is the only circuit court that has found that receipt by a State of federal prison funds constitutes a waiver of its sovereign immunity as to RLUIPA claims for monetary damages. As discussed below, the Court finds that the Fourth Circuit's resolution of this question is better reasoned and consistent with relevant Supreme Court authority.

In *Madison v. Virginia*, Ira Madison sued the Commonwealth of Virginia (and various Virginia Department of Corrections officials) alleging, in part, that he was being denied kosher meals in violation of RLUIPA. *Madison*, 474 F.3d at 122-23. The district court concluded that "by accepting federal funds, Virginia had waived its sovereign immunity for RLUIPA damages claims." *Id.* at 123. Virginia requested interlocutory review of this determination and the Fourth Circuit Court of Appeals agreed to hear the matter. *Id.*

After finding that the enactment of RLUIPA represented a valid exercise of congressional spending authority, the court turned to the question of whether Virginia, by accepting federal prison funds, "knowingly consented to damages actions against the State." *Id.* at 123-29. In this respect, the court observed that:

> Although principles of dual sovereignty limit Congress' authority to abrogate State immunity, a State may consent to suit. *Beers v. Arkansas,* 61 U.S. (20 How.) 527, 529, 15 L.Ed. 991 (1858). This "unremarkable" proposition, *Seminole Tribe,* 517 U.S. at 65, 116 S.Ct. 1114, reflects an exercise, rather than a limitation of, State sovereignty. Thus, a State may waive its immunity by voluntarily participating in a federal spending program provided that Congress has expressed "'a clear intent to condition participation. . .on a State's consent to waive its constitutional immunity.'" *Litman,* 186 F.3d at 550 (quoting *Atascadero State Hosp. v. Scanlon,* 473 U.S. 234, 247, 105 S.Ct. 3142, 87 L.Ed.2d 171 (1985)).
>
> Nevertheless, State sovereign immunity is among the Constitution's most foundational principles, *see, e.g., Brown v. N.C. Div. of Motor Vehicles,* 166 F.3d 698, 704 (4th Cir.1999), and we may not "infer that a State's

immunity from suit in the federal courts has been negated," *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 99, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984).  "[T]here can be no consent by implication or by use of ambiguous language."  *Library of Congress v. Shaw,* 478 U.S. 310, 318, 106 S.Ct. 2957, 92 L.Ed.2d 250 (1986) (quoting *United States v. N.Y. Rayon Importing Co.,* 329 U.S. 654, 659, 67 S.Ct. 601, 91 L.Ed. 577 (1947)).  A waiver must be "unequivocally expressed in statutory text." *See Lane v. Pena,* 518 U.S. 187, 192, 116 S.Ct. 2092, 135 L.Ed.2d 486 (1996).  For this reason, general participation in a federal program or the receipt of federal funds is insufficient to waive sovereign immunity.  *See Atascadero,* 473 U.S. at 246-47, 105 S.Ct. 3142. Rather, "Congress must make its intention unmistakably clear in the language of the statute." *Hoffman v. Conn. Dep't of Income Maintenance,* 492 U.S. 96, 101, 109 S.Ct. 2818, 106 L.Ed.2d 76 (1989) (plurality) (internal quotation omitted).

*Id.* at 129-30.

RLUIPA expressly provides that "[a] person may assert a violation of this chapter as a claim or defense in a judicial proceeding and obtain appropriate relief against a government." 42 U.S.C. § 2000cc-2(a).  RLUIPA defines "government" as including: (i) a State, county, municipality, or other governmental entity created under the authority of a State; (ii) any branch, department, agency, instrumentality, or official of an entity listed in clause (i); and (iii) any other person acting under color of State law.  42 U.S.C. § 2000cc-5(4).  Considering the clarity of this statutory language, the *Madison* court concluded that

On its face, RLUIPA thus creates a private cause of action against the State, and Virginia cannot be heard to claim that it was unaware of this condition.  By voluntarily accepting federal correctional funds, it consented to federal jurisdiction for at least some form of relief.

*Madison*, 474 F.3d at 130 (internal citations omitted).

As the court recognized, however, "a waiver of sovereign immunity for some type of remedy does not necessarily extend to suits for damages."  *Id.* at 131 (quoting *Webman*, 441 F.3d at 1025).  Accordingly, the court observed that the conclusion that RLUIPA "unambiguously conditions

federal prison funds on a State's consent to suit," does not answer the question whether this waiver of sovereign immunity extends to claims for monetary damages. *Id.* at 131.

For a waiver of sovereign immunity to extend to claims for monetary damages, the waiver must "unambiguously" extend to such claims. *Lane v. Pena*, 518 U.S. 187, 192 (1996); *see also*, *Asociacion de Empleados del Area Canalera (ASEDAC) v. Panama Canal Commission*, 453 F.3d 1309, 1315 (11th Cir. 2006); *Webman*, 441 F.3d at 1025; *Cudjoe ex rel. Cudjoe v. Department of Veterans Affairs*, 426 F.3d 241, 247 (3rd Cir. 2005). Any purported waiver of sovereign immunity will be "strictly construed, in terms of its scope, in favor of the sovereign." *Pena*, 518 U.S. at 192; *see also*, *Gomez-Perez v. Potter*, 128 S.Ct. 1931, 1942-43 (2008). Moreover, a court may not resort to legislative history in an attempt to resolve an ambiguity in the statutory language regarding the extent of the waiver of sovereign immunity. *See United States v. Nordic Village*, 503 U.S. 30, 37 (1992) ("the 'unequivocal expression' of elimination of sovereign immunity that we insist upon is an expression in statutory text" and "[i]f clarity does not exist there, it cannot be supplied by a committee report"); *see also*, *Pena*, 518 U.S. at 192.

Accordingly, if the statutory language in question is susceptible to multiple reasonable interpretations, one of which does not support the inclusion of monetary damages, the waiver of sovereign immunity cannot be held to extend to claims for monetary damages. *See Nordic Village*, 503 U.S. at 34-37. Relying on these principles, the *Madison* court concluded that

> RLUIPA's "appropriate relief against a government" language falls short of the unequivocal textual expression necessary to waive State immunity from suits for damages. The statute makes no reference to monetary relief - or even to sovereign immunity generally. And, like the Bankruptcy Code provision at issue in *Nordic Village*, "appropriate relief" is "susceptible to more than one interpretation." That is, although "appropriate relief" might be read to include damages in some contexts, the term might be read to preclude them.

*          *          *

Had Congress wished to effect a State's waiver of Eleventh Amendment sovereign immunity from suit for damages as a consequence of accepting federal funds, it could easily have expressed that intention. In the Civil Rights Act of 1991, 42 U.S.C. § 1981a(1)(2) (2000), for instance, Congress crafted a clear waiver of federal sovereign immunity from monetary relief. The Act provides for federal jurisdiction and permits a "complaining party [to] recover compensatory. . .damages" from, *inter alia*, government actors.

While particular phrasing may not be necessary to waive sovereign immunity for damages, an unequivocal textual waiver of immunity that "extend[s] unambiguously to such monetary claims" is. Thus, the fact that "appropriate relief" is open-ended forecloses any argument that the statute waives immunity for monetary relief.

*Madison*, 474 F.3d at 131-32 (internal citations omitted).

The *Madison* court's resolution of this matter is well-reasoned and consistent with controlling authority.[4] On the other hand, the Eleventh Circuit's decision in *Smith v. Allen*, 502 F.3d 1255 (11th Cir. 2007), is unpersuasive and conflicts with relevant Supreme Court authority.

In *Smith*, the court found that RLUIPA created a private cause of action (to obtain "appropriate relief") against a State that accepted federal prison funds. *Smith*, 502 F.3d at 1269. The court, relying on *Franklin v. Gwinnett County Public Schools*, 503 U.S. 60 (1992), then stated that "where Congress ha[s] not given any guidance or clear indication of its purpose with respect to remedies, federal courts should presume the availability of all appropriate remedies." *Smith*, 502 F.3d at 1270. The *Smith* court concluded, therefore, that "[i]n light of *Franklin*," the phrase "appropriate relief" as used

---

[4] The Court recognizes that much of the authority relied on by the *Madison* court concerned the question of whether Congress had properly waived the sovereign immunity of the United States. The Court finds this of no consequence because as the Supreme Court has observed, "[i]n considering whether the Eleventh Amendment applies. . .cases involving the sovereign immunity of the Federal Government. . .provide guidance, for this Court has recognized a correlation between sovereign immunity principles applicable to States and the Federal Government." *California v. Deep Sea Research, Inc.*, 523 U.S. 491, 506-07 (1998); *see also*, *Madison*, 474 F.3d at 131.

in RLUIPA "is broad enough to encompass the right to monetary damages." *Smith*, 502 F.3d at 1270.

In *Franklin*, a female high school student asserted an action for monetary damages under Title IX of the Education Amendments of 1972. *Franklin*, 503 U.S. at 62-63. The district court dismissed the claim on the grounds that "Title IX does not authorize an award of damages," a determination which was affirmed by the Eleventh Circuit Court of Appeals. *Id.* at 64. The Supreme Court agreed to hear the matter to resolve the question "whether the implied right of action under Title IX. . .supports a claim for money damages." *Id.* at 62-63. In this respect, the Court observed:

> In *Cannon v. University of Chicago*, 441 U.S. 677, (1979), the Court held that Title IX is enforceable through an implied right of action. We have no occasion here to reconsider that decision. Rather, in this case we must decide what remedies are available in a suit brought pursuant to this implied right. As we have often stated, the question of what remedies are available under a statute that provides a private right of action is "analytically distinct" from the issue of whether such a right exists in the first place. Thus, although we examine the text and history of a statute to determine whether Congress intended to create a right of action, we presume the availability of all appropriate remedies unless Congress has expressly indicated otherwise.

*Franklin*, 503 U.S. at 65-66 (internal citations omitted).

Finding that Congress had "made no effort to restrict the right of action recognized in *Cannon*. . .or to alter the traditional presumption in favor of any appropriate relief for violation of a federal right," the *Franklin* Court concluded that "a damages remedy is available for an action brought to enforce Title IX." *Id.* at 66-76. Relying on this analysis, the *Smith* court concluded that:

> In light of *Franklin* and its progeny, we agree that the use of the phrase "appropriate relief" in section 3 of RLUIPA. . .is broad enough to encompass the right to monetary damages in the event a plaintiff establishes a violation of the statute. Congress expressed no intent to the contrary within RLUIPA, even though it could have, by, for example, explicitly limiting the remedies [therein] to injunctive relief only. Instead, Congress used broad, general language in crafting the remedies section of RLUIPA, stating that a prevailing party could obtain

-9-

> "appropriate relief."  We assume that, when Congress acted, it was aware
> of Franklin's presumption in favor of making all appropriate remedies
> available to the prevailing party.   In light of that presumption, we
> conclude that, absent an intent to the contrary, the phrase "appropriate
> relief" in RLUIPA encompasses monetary as well as injunctive relief.

*Smith*, 502 F.3d at 1270-71 (internal citations omitted).

The *Smith* court's reliance on *Franklin* is misplaced.  As the Supreme Court subsequently recognized:

> Because the private right of action under Title IX is judicially implied, we
> have a measure of latitude to shape a sensible remedial scheme that best
> comports with the statute.  That endeavor inherently entails a degree of
> speculation, since it addresses an issue on which Congress has not
> specifically spoken.

*Gebser v. Lago Vista Independent School District*, 524 U.S. 274, 284 (1998) (internal citations omitted).

In short, the *Franklin* Court was engaged in the admittedly speculative task of attempting to define the remedies available in an implied right of action.  The right to assert a private cause of action under RLUIPA is not an implied right of action, but is instead a right expressly articulated in the statute. Moreover, the *Franklin* Court was not faced with a claim of sovereign immunity.  As discussed previously, courts cannot infer that a State has waived its sovereign immunity.  Instead, a finding that a State has waived its sovereign immunity must be based on unequivocal statutory language which makes Congress' intent unmistakably clear.  While it may be appropriate for a court to engage in speculation to identify presumed remedies in an implied cause of action, such speculation and presumption is utterly inappropriate when evaluating a claim of sovereign immunity.  The Supreme Court has recognized this, observing that:

> sovereign immunity prohibits wholesale application of *Franklin* to
> actions against the Government. . .where a cause of action is authorized
> against the federal government, the available remedies are not those that

> are "appropriate," but *only* those for which sovereign immunity has been
> *expressly waived*.

*Pena*, 518 U.S. at 196-97 (emphasis added).

With respect to this issue, several other courts have found persuasive the reasoning articulated by the Fourth Circuit in *Madison v. Virginia*. *See, e.g.*, *Sharp v. Johnson*, 2008 WL 941686 (W.D. Pa., Apr. 7, 2008); *Gibb v. Crain*, 2008 WL 744249 (E.D. Tex., Mar. 19, 2008); *Cardinal v. Metrish*, 2008 WL 696479 (W.D. Mich., Mar. 13, 2008); *Bock v. Gold*, 2008 WL 345890 (D.Vt., Feb. 7, 2008); *Toler v. Leopold*, 2007 WL 2907889 (E.D. Mo., Oct. 1, 2007).

For the reasons articulated herein, the undersigned is persuaded by the Fourth Circuit's analysis. The undersigned is likewise not persuaded by the Eleventh Circuit's decision in *Smith v. Allen*. Accordingly, the Court recommends that to the extent that Plaintiff seeks to recover monetary damages under RLUIPA against Defendant Burnett in his official capacity, such claims must be dismissed on the ground that such are barred by the Eleventh Amendment to the United States Constitution. Defendant has not challenged Plaintiff's ability to obtain injunctive or declaratory relief under RLUIPA, relief which the Court finds is available under RLUIPA against the State (or its officials in their official capacity). *See Madison*, 474 F.3d at 130-31.

II.     **Plaintiff is not Entitled to Recover Monetary Damages for his RLUIPA Claim Asserted Against Defendant Burnett in his Personal Capacity**

Plaintiff has also sued Defendant Burnett in his personal capacity. Defendant asserts that RLUIPA precludes the recovery of money damages against him in his personal capacity. While Plaintiff does not appear to have requested monetary damages under RLUIPA against Defendant in his personal

capacity, the Court will nonetheless address this aspect of Defendant's motion in the event that Plaintiff again amends his complaint or his amended complaint is interpreted as requesting such damages.

As noted above, legislation enacted by Congress pursuant to its authority under the Spending Clause is "much in the nature of a contract." *Arlington*, 548 U.S. at 296. As a result, "when Congress attaches conditions to the award of federal funds under its spending power" courts must "examine closely the propriety of private actions holding the recipient liable in monetary damages for noncompliance with the condition." *Gebser*, 524 U.S. 287. In this respect, the "central concern" is that "the receiving entity of federal funds [has] notice that it will be liable for a monetary award." *Id.*

Recovery of money damages for violation of legislation enacted by Congress pursuant to its Spending Clause power is limited. For example, as is recognized, Title IX was enacted pursuant to Congress' spending power. *See Horner v. Kentucky High School Athletic Ass'n*, 206 F.3d 685, 700 (6th Cir. 2000) (citations omitted). With respect to Title IX claims, the Supreme Court has held that "[t]he Government's enforcement power may only be exercised against the funding recipient. . .and we have not extended damages liability under Title IX to parties outside the scope of this power." *Davis Next Friend LaShonda D. v. Monroe County Board of Education*, 526 U.S. 629, 641 (1999). The Court discerns no rationale for interpreting RLUIPA, likewise enacted pursuant to Congress' spending power, any differently. In the RLUIPA context the recipient of federal prison funds (i.e., the "contracting party") is the State, not its individual employees or representatives. *See Smith*, 502 F.3d at 1274-75.

In sum, Defendant Burnett is not a recipient of federal prison funds and as previously noted, RLUIPA does not provide for the recovery of monetary damages. Thus, Defendant Burnett could not have been aware that violation of RLUIPA would subject him to a claim for monetary damages in his personal capacity. Accordingly, the Court recommends that Plaintiff is barred from recovering

monetary damages against Defendant Burnett in his personal capacity for his alleged violation of RLUIPA.  *See, e.g., Smith*, 502 F.3d at 1271-75 ("RLUIPA - a provision that derives from Congress' Spending Power - cannot be construed as creating a private action against individual defendants for monetary damages); *Sharp v. Johnson*, 2008 WL 941686 (W.D. Pa., Apr. 7, 2008) (same).

**III.        The PLRA does not Restrict Plaintiff's Ability to Recover Monetary Damages**

Defendant asserts that the Prison Litigation Reform Act (PLRA) precludes Plaintiff from recovering monetary damages for violation of his First Amendment rights.  In support of his position, Defendant relies on 42 U.S.C. § 1997e(e), which provides as follows:

> (e) Limitation on recovery
>
> No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury.

In his Amended Complaint, Plaintiff has not expressly requested compensatory damages for violation of his First Amendment rights, but has instead expressly requested only punitive damages. (Dkt. #79 at 33-36).  The Sixth Circuit has not definitively determined whether § 1997e(e) prevents recovery of punitive damages.[5]  After examining the matter, however, the Court concludes that § 1997e(e) does not bar punitive damages because such damages are not "for mental or emotional injury."

It is well recognized that compensatory and punitive damages "serve different purposes." *State Farm Mutual Auto Ins. Co. v. Campbell*, 538 U.S. 408, 416 (2003).  Compensatory damages are

---

[5]  The Court notes that the Sixth Circuit has, in an unpublished opinion, suggested that punitive damages are not precluded by § 1997e(e).  *See Miller v. Bock*, 55 Fed. Appx. 310, 312 (6th Cir., Jan. 28, 2003) (citing *Perkins v. Kansas Dep't of Corr.*, 165 F.3d 803, 808 n.6 (10th Cir. 1999)).

"intended to redress the concrete loss that the plaintiff has suffered by reason of the defendant's wrongful conduct."  On the other hand, punitive damages "are aimed at deterrence and retribution."  *Id.*  Punitive damages are intended to punish unlawful conduct and prevent its reoccurrence.  *See BMW of North America, Inc. v. Gore*, 517 U.S. 559, 568 (1996); *Memphis Community School District v. Stachura*, 477 U.S. 299, 306 n.9 (1986) (the purpose of punitive damages is to "punish the defendant for his willful or malicious conduct and to deter others from similar behavior").

Moreover, the ability to recover punitive damages is not triggered by the loss or damage that the plaintiff may have suffered, but instead are recoverable only when "the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others."  *Smith v. Wade*, 461 U.S. 30, 56 (1983); *see also, Preferred Properties, Inc. v. Indian River Estates, Inc.*, 276 F.3d 790, 799 (6th Cir. 2002) (recognizing that "[t]he standard for punitive damages in a federal civil rights action is based on the defendant's state of mind and does not require egregious or outrageous behavior") (citing *Wade*, 461 U.S. at 56).

In sum, while § 1997e(e) seeks to prevent recovery of damages "for mental or emotional injury" suffered by the plaintiff, punitive damages are intended to punish wrongdoers for their unlawful conduct and deter others from engaging in similar misconduct.  Because punitive damages are not awarded "for mental or emotional injury," the Court concludes that such are not precluded by 42 U.S.C. § 1997e(e).  While Plaintiff has not expressly requested compensatory damages, the Court will nonetheless address whether recovery of such damages should be precluded by § 1997e(e) in the event that Plaintiff again amends his complaint or his amended complaint is interpreted as requesting compensatory damages.

As the Supreme Court has held, compensatory damages "may include not only out-of-pocket loss and other monetary harms, but also such injuries as impairment of reputation. . ., personal humiliation, and mental anguish and suffering." *Stachura*, 477 U.S. at 307 (quoting *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 350 (1974)). Defendant nonetheless asserts that § 1997e(e) prevents Plaintiff from seeking compensatory damages for violation of his First Amendment rights because he has not alleged a physical injury.

The Court notes that Plaintiff is not requesting damages "for mental or emotional injury," but instead seeking relief for violation of his First Amendment rights. As has been recognized, the "deprivation of First Amendment rights entitles a plaintiff to judicial relief wholly aside from any physical injury he can show, or any mental or emotional injury he may have incurred." *Canell v. Lightner*, 143 F.3d 1210, 1213 (9th Cir. 1998); *see also, Rowe v. Shake*, 196 F.3d 778, 781-82 (7th Cir. 1999) (same); *Reischauer v. Jones*, 2007 WL 1521578 at *9 (W.D. Mich., May 23, 2007) (same). However, even if Plaintiff were seeking to recover damages "for mental or emotional injury," the Court finds that such are recoverable because § 1997e(e) does not apply to First Amendment claims.

Application of § 1997e(e) to Eighth Amendment claims is understandable, considering that Eighth Amendment claims implicate a prisoner's *physical* well being. On the other hand, the First Amendment prohibits governmental interference with or deprivation of *non-physical* matters such as individual freedom, personal liberty, and spiritual autonomy. *See Percival v. Rowley*, 2005 WL 2572034 at *2 (W.D. Mich., Oct. 12, 2005). Unlike Eighth Amendment claims where allegations of physical injury dominate, it is rare for a violation of an individual's First Amendment rights to result in physical injury. *See Siggers-El v. Barlow*, 433 F.Supp.2d 811, 816 (E.D. Mich. 2006); *Percival*, 2005 WL 2572034 at *2.

To apply § 1997e(e) to First Amendment claims would effectively immunize prison officials from liability for violations of prisoners' First Amendment rights. *See Siggers-El*, 433 F.Supp.2d at 816; *Percival*, 2005 WL 2572034 at *2. The PLRA was intended to deter prisoners from filing frivolous lawsuits, not immunize prison officials against legitimate claims for violation of the First Amendment. *See Siggers-El*, 433 F.Supp.2d at 816; *Percival*, 2005 WL 2572034 at *2. Thus, application of § 1997e(e) to First Amendment claims, such as that advanced by Plaintiff, is contrary to Congressional intent. As the Honorable Richard Alan Enslen has observed:

> The Court is convinced that allowing prison officials to violate inmate First Amendment rights with impunity, resolute in the knowledge that a First Amendment physical injury will virtually never manifest itself within the meaning of section 1997e(e), is not what Congress intended when it passed the Act. Prison walls do not form a barrier separating prison inmates from the protections of the Constitution.

*Percival*, 2005 WL 2572034 at *2 (quoting *Turner v. Safley*, 482 U.S. 78, 84 (1987)).

The Court recognizes that the various circuit courts of appeal are not in agreement as to whether § 1997e(e) applies to First Amendment claims. *See, e.g., Geiger v. Jowers*, 404 F.3d 371 (5th Cir. 2005) (holding that § 1997e(e) applies to First Amendment claims); *Canell v. Lightner*, 143 F.3d 1210 (9th Cir. 1998) (concluding that § 1997e(e) does not apply to First Amendment claims). The Sixth Circuit Court of Appeals has not resolved the issue. However, in an unpublished decision, *Williams v. Ollis*, 2000 WL 1434459 (6th Cir., Sept. 18, 2000), the court, citing the Ninth Circuit's *Canell* decision, permitted a prisoner's First Amendment claims for money damages to survive a challenge that such were precluded by § 1997e(e). *Ollis*, 2000 WL 1434459 at *2 (citing *Canell*, 143 F.3d at 1213). While this authority is not controlling, the Court nonetheless finds it persuasive as to how the Sixth Circuit would resolve the issue.

The Court concludes, therefore, that § 1997e(e) has no application in this matter and thus imposes no limitation on Plaintiff's right to recover monetary damages otherwise permitted by law.  In this respect, the Court agrees with Defendant that Plaintiff cannot recover damages based on "the jury's subjective perception of the importance of constitutional rights as an abstract matter."  *Stachura*, 477 U.S. at 308.  Rather, Plaintiff may recover compensatory damages only for those injuries which he can establish that he suffered.

## IV.        Defendant is not Entitled to Qualified Immunity

Defendant Burnett asserts that Plaintiff's claims must be dismissed because he is entitled to qualified immunity.  The doctrine of qualified immunity recognizes that government officials must be able to carry out their duties without fear of harassing litigation.  *See Davis v. Scherer*, 468 U.S. 183, 195 (1984).  As is well recognized, they can do so only if they reasonably can anticipate when their conduct may give rise to liability for damages, and if unjustified lawsuits are quickly terminated.  *Id.* Accordingly, when government officials perform discretionary functions they "are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *see also, Behrens v. Pelletier*, 516 U.S. 299, 301 (1996); *Phillips v. Roane County, Tennessee*, - - - F.3d - - -, 2008 WL 2852898 at *4 (6th Cir., July 25, 2008).

To determine whether a government official is entitled to qualified immunity, the Court must undertake a two-step inquiry.  The Court must first determine whether the facts asserted by Plaintiff, when viewed in the light most favorable to him, establish a violation of a right secured by a federal statute or the United States Constitution.  *See Phillips*, 2008 WL at *4.  If Plaintiff has alleged

-17-

facts sufficient to make such a showing, the Court must then determine whether the right which Defendant allegedly violated was "clearly established" as of the date Defendant acted. *Id.*

In determining whether Defendant is entitled to qualified immunity, the focus is on the objective legal reasonableness of his alleged actions in light of clearly established law. *See Harlow*, 457 U.S. at 818. Defendant is entitled to qualified immunity unless the contours of the right are "sufficiently clear that a reasonable official would understand that what he is doing violates that right." *McBride v. Village of Michiana*, 100 F.3d 457, 460 (6th Cir. 1996) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). The unlawfulness of his alleged conduct must be apparent in light of pre-existing law. *See Anderson*, 483 U.S. at 640.

Defendant previously asserted that he was entitled to qualified immunity as to Plaintiff's RLUIPA claim. The undersigned recommended that Defendant was not entitled to qualified immunity as to this claim. (Dkt. #118 at 10-12). The Honorable Richard Alan Enslen subsequently adopted this recommendation. (Dkt. #124 at 3-4). Thus, Defendant's claim of qualified immunity as to Plaintiff's RLUIPA claim has already been resolved.

As for Plaintiff's claim that he is entitled to qualified immunity as to Plaintiff's First Amendment claim, the result is the same. The Court has twice rejected Defendant Burnett's motions for summary judgment regarding Plaintiff's remaining First Amendment claim. Plaintiff has, therefore, alleged facts which, when viewed in the light most favorable to him, demonstrate that Defendant violated his rights under the First Amendment. Furthermore, as the Court's analysis of Defendant's previous motions for summary judgment makes clear, the right in question was clearly established long before Defendant acted in this matter. The Court recommends, therefore, that Defendant Burnett is not entitled to qualified immunity as to Plaintiff's remaining RLUIPA and First Amendment claims.

## CONCLUSION

As discussed herein, the Court recommends that <u>Defendant's Motion Regarding Availability of Monetary Damages and Qualified Immunity</u>, (dkt. #157), be **granted in part and denied in part**.   Specifically, the Court recommends that: (1) Defendant Burnett is entitled to Eleventh Amendment immunity to the extent that Plaintiff seeks monetary damages against him in his official capacity for allegedly violating RLUIPA; (2) Plaintiff is not entitled to recover monetary damages against Defendant Burnett in his personal capacity for allegedly violating RLUIPA; (3) the PLRA does not impair Plaintiff's ability to recover compensatory damages on his First Amendment claim; and (4) Defendant is not entitled to qualified immunity.

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within ten (10) days of the date of service of this notice.   28 U.S.C. § 636(b)(1)(C).   Failure to file objections within the specified time waives the right to appeal the District Court's order.   *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

Respectfully submitted,

Date:  August 7, 2008

   /s/ Ellen S. Carmody
ELLEN S. CARMODY
United States Magistrate Judge